

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– against –

DAQUAN BALLINGER,

Defendant.

---

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

JACK B. WEINSTEIN, Senior United States District Judge:

**Appearances**

**For United States:**

Tanya Hajjar
U.S. Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6109
Email: tanya.hajjar@usdoj.gov

**For Defendant:**

Michael D. Weil
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-407-7413
Email: michael_weil@fd.org

## Table of Contents

I. Introduction ..................................................................................................................1
   A. Instant Offenses .......................................................................................................1
   B. Guilty Plea ..............................................................................................................2
   C. Sentencing Hearing .................................................................................................2
II. Offense Level, Category, and Sentencing Guidelines Range .....................................3
III. Law ..............................................................................................................................3
IV. 18 U.S.C. § 3553(a) Considerations ............................................................................4
V. Sentence .......................................................................................................................7
VI. Conclusion ...................................................................................................................7

## I. Introduction

Daquan Ballinger pled guilty to one count of being a Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). Presentence Investigation Report, Feb. 23, 2017 ("PSR"), at ¶ 1. On December 10, 2015, the New York Police Department ("NYPD") received calls that shots were fired near 364 Sutter Avenue in Brooklyn. Multiple casings and gunshot fragments were found. Soon after, officers received another call that a man was shot nearby. Officers discovered a man suffering from multiple gunshot wounds to his abdomen and found bullet casings in front of 362 Sutter Avenue. Forensic analysis revealed that all the casings corresponded to bullets shot by the same gun. The victim subsequently identified Ballinger as the shooter. PSR at ¶ 2; Addendum at ¶ 2.

On March 24, 2017, Ballinger was sentenced to 75 months in prison, three years of supervised release, and a $100 special assessment. *See* Sentencing Hearing Transcript, Mar. 24, 2017 ("Sent. Hr'g").

### A. Instant Offenses

Ballinger is a 29-year-old American citizen born in Brooklyn, New York. PSR at 2. On December 10, 2015, at 8:04 a.m., the New York Police Department ("NYPD") received a call that shots were fired near the vicinity of 364 Sutter Avenue in Brooklyn, New York. PSR at ¶ 2;

1

Addendum at ¶ 2. A canvas of the crime scene yielded eleven gunshot casings and two bullet fragments. PSR at ¶ 3; Addendum at ¶ 2. On that same day at approximately 9:30 a.m., the NYPD responded to a report that an individual had been shot near 362 Sutter Avenue in Brooklyn, New York. PSR at ¶ 2; Addendum at ¶ 2. The victim was immediately rushed to Brookdale Hospital to be treated for multiple gunshot wounds to the abdomen. *Id.* A canvas of the crime scene yielded five gunshot casings and one bullet fragment. PSR at ¶ 3; Addendum at ¶ 2. Video surveillance shows defendant shooting at the victim. *Id.* Detectives met with the victim on two occasions, and during both visits, the victim identified Ballinger as the shooter by selecting his picture out of a series of six possible suspects. PSR. at ¶ 4; Addendum at ¶ 3.

Ballinger was arrested on January 8, 2015 while serving a three year term of supervised release. PSR. at ¶¶ 5-6. According to the Government and case agent, Ballinger admitted to the NYPD that he was involved in the earlier shooting. *Id.* at ¶ 6; Addendum at ¶ 4. Subsequent NYPD lab reports determined that all casings and bullet fragments from both shootings from the same gun. PSR at ¶ 3; Addendum at ¶ 4. Ballinger is ~~likely~~ highly probably responsible for both shootings. *See* Addendum at 2. For the purpose of expediting the sentencing process, defendant chose to waive a *Fatico* hearing on the sections of the PSR that hold him accountable for the shootings. Sent. Hr'g.

### B. Guilty Plea

The guns were not found. But, based on the shell casings, on November 8, 2016, Ballinger pled guilty to one count of being a Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). *See* Pleading Hr'g Tr., Nov. 8, 2016 ("Pleading Hr'g Tr."), at 21:8.

### C. Sentencing Hearing

A sentencing hearing was conducted on March 24, 2017. *See* Sent. Hr'g. The hearing was videotaped to develop an accurate record of the courtroom atmosphere, as well as some of

the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264–65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II.     Offense Level, Category, and Sentencing Guidelines Range

Under the sentencing guidelines, defendant's base offense level is 20. *See* PSR at ¶ 10. The offense level was enhanced by four points pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because defendant used or possessed a firearm that is reasonably believed to be connected to another felony. PSR at ¶ 11. The offense level was decreased by three points pursuant to U.S.S.G. § 3E1.1(a)-(b) for acceptance of responsibility within a timely matter. PSR at ¶¶ 17-18. The total adjusted offense level is 21. *Id.* at ¶ 19. The defendant has a criminal history category of V. *Id.* at ¶ 40. The Guidelines imprisonment range is 70 to 87 months. *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 80.

## III.    Law

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." (footnote omitted)).

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the

court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Ballinger was born into a non-marital union on September 15, 1987, in Brooklyn, New York. PSR at ¶ 53. His father resided in North Carolina, was absent from his life and was murdered in 2009. Defendant's mother, Gwendelyn Ballinger, married Douglas Warren in 1995. *Id.* at ¶ 55. The marriage ended in divorce in 2002. *Id.* Defendant had a paternal relationship with Mr. Warren, but they have not been in contact for the last year. *Id.* Defendant has four maternal half-siblings: two half-brothers and two half-sisters. He is only in contact with his half-sisters, both of whom are aware of his arrest and remain supportive. *Id.* at ¶ 56.

As a child, Defendant was raised by his mother in low socio-economic circumstances. *Id.* at ¶ 59. He has lived in Brooklyn since birth. *Id.* At the age of 16, defendant began smoking

marijuana, and he started using cocaine at 18. *Id.* at ¶¶ 67-69. At times, he would use marijuana and cocaine simultaneously. *Id.* In 2011, defendant stopped using crack-cocaine because he was no longer interested in using the substance. *Id.* During the ninth grade, he was expelled from Thomas Jefferson High-School for smoking marijuana, and began attending Jim Thorpe High-School in Brooklyn until grade eleven when he dropped out. *Id.* at ¶ 74. At Jim Thrope High-School, he maintained average grades, but received detention multiple times for fighting. *Id.* at ¶ 73. When asked why he discontinued his education, defendant stated that he could not afford to keep up with students and their attire. *Id.* While in prison, Ballinger acquired a General Education Diploma. *Id.* at ¶ 72.

Since 2006, Ballinger has been in a long-term relationship with Tina Ford, who currently resides in Long Island City, New York. *Id.* at ¶ 57. She is employed as a conductor by the Metropolitan Transportation Authority. *Id.* Ford is the mother of Ballinger's eight-year-old son, who is in good health. *Id.* She also has a thirteen-year-old child from a previous relationship. Both children are upset by defendant's arrest and absence. *Id.* Throughout their relationship, defendant and Ford have lived together in their own apartment in the same building where Ballinger was raised by his mother in Brooklyn. *Id.* at ¶ 59. Though they are no longer in a romantic relationship, they remain in regular contact with each other. *Id.* at ¶ 58; Sent. Hr'g. It is uncertain that they will continue to reside together upon Ballinger's release from custody. PSR at ¶ 58.

Defendant has a long and checkered criminal history of violent crime. He has previously been convicted of assault in third degree, robbery in the third degree, and being a felon in possession of firearms or ammunition multiple times. *Id.* at ¶¶ 21-36; Sent. Hr'g. Since 2007, defendant has been in and out of jail, serving sentences of 10 months, 30 months and 46 months.

*Id.* Defendant has also violated supervised release on several occasions and has been sanctioned many times for offenses that occurred while in custody. *Id.* The instant offense is the third time Ballinger appeared before this court for a conviction of being a felon in possession of firearms or ammunition. *Id.*

Defendant suffers from Hyperthyroidism, Gastro-Esophageal Reflux Disease, Depressive Disorder, Anxiety, and Antisocial Personality Disorder. *Id.* at ¶¶ 63-66. His mental illness is attributable to the trauma he endured during his childhood. Sent. Hr'g; PSR. at ¶ 64. Apart from being raised by a single mother of five children, in 2006, defendant witnessed the violent murder of a cousin with whom he maintained a close relationship. *Id.* While incarcerated, he witnessed two deaths. *Id.* at ¶ 66. He believes that he will benefit from mental health treatment. *Id.*

Defendant has two outstanding supervised release violations. *See* Violation of Supervised Release Report, 11-CR-541, Jan. 14, 2016; Report on Violation of Supervised Release, Jan. 24, 2012, 8-CR-156. The violations, having been considered in the instant sentencing, are dismissed. *See* Sent. Hr'g.

Ballinger regrets his criminal conduct and attributes this offense to "bad decision making." *Id.* He stated at sentencing that he no longer wants to live a life of crime, and he wishes to be a better parent. *Id.* He is concerned that he has become accustomed to living in prison and is upset that "living in a cage, like an animal," has become normal to him. *Id.*; PSR at ¶ 66. In 2012, defendant's expressed remorse was a factor in his receipt of a below-guidelines sentence. *See* Government Sentencing Memo., 16-CR-66, ECF No. 25, at 3 (citing Def.'s Sentencing Memo., 11-CR-541, ECF No. 19, at 3); Sent. Hr'g. Upon release he committed another serious crime. Incarceration is not effective in inhibiting his criminal conduct. Incapacitation was a prominent factor considered in the instant sentence.

## V. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence. In light of defendant's history of violent crime, Ballinger is sentenced 75 months of imprisonment. Given defendant's background, it is recommended that he be placed in an institution capable of offering adequate psychological treatment, that he learn a trade, that he receive reasonable protection from other prisoners without excessive solitary confinement, and that he remain close to New York City so his family can visit him. *Id.*

No fine was imposed because of the defendant's inability to pay one. *See* Sent. Hr'g. A $100 special assessment was imposed. 18 U.S.C. § 3013. Three years of supervised release was ordered. *See* Sent. Hr'g. While on supervised release, Ballinger shall be subject to search without a warrant, shall not possess a firearm or ammunition, and shall not associate with criminals. *Id.*

Defendant's two supervised release violations are dismissed. They have been considered in this sentence as likelihood of recidivism. *See* Sent. Hr'g.

## VI. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 4, 2017
Brooklyn, New York